**Not for Publication**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **UNITED STATES OF AMERICA** | Criminal No. 18-0326 (ES) |
| v. | OPINION |
| **ROBERTO RAMOS** | |

**SALAS, DISTRICT JUDGE**

Before the Court is defendant Roberto Ramos's ("Defendant") motion for compassionate release (D.E. No. 51 ("Motion")). The Government opposes the Motion. (D.E. No. 55).[1] Having considered the parties' submissions, the Court decides the Motion without oral argument. *See* Fed. R. Crim. P. 43(b)(4); *United States v. Styer*, 573 F.3d 151, 154 (3d Cir. 2009). For the following reasons, the Court DENIES the Motion.

**I.  BACKGROUND**

On August 28, 2018, Defendant pled guilty before the Honorable Judge William H. Walls to one count of conspiracy to distribute, and possess with the intent to distribute, 100 grams or more of a mixture and substance containing a detectable amount of heroin in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B), and 846.[2] (D.E. Nos. 18–20). Thereafter, this matter was transferred to the Undersigned. (D.E. No. 41). On December 20, 2019, the Court sentenced Defendant to a term of thirty-nine months of imprisonment to be followed by five years of supervised release. (D.E.

---

[1] As discussed below, in addition to Defendant's reply to the Government's opposition (D.E. No. 56), defense counsel supplemented the Motion multiple times (*see* D.E. Nos. 57, 63–64 & 67) and the Government filed opposing submissions (*see* D.E. 55, 62 & 66). In rendering this Opinion, the Court considers all submissions. Pin cites to Docket Entry Numbers 57, 62, 67, and 70 refer to the pagination automatically generated by the judiciary's Case Management/Electronic Case Filing system.

[2] After violating a condition of his pretrial release, Defendant consented to his detention with the United States Marshals pending further proceedings. (D.E. Nos. 35 & 36).

No. 44).

Following Defendant's *pro se* submissions for compassionate release in early 2021 (*see* D.E. Nos. 47 & 48), the Federal Public Defender ("FPD") assumed representation and filed a supplemental motion for a reduction of sentence under 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act ("FSA"), which the Government opposed.[3] (D.E. Nos. 51 & 55). At the time of these filings, Defendant was located at the Hudson County Correctional Center ("HCCC") and was not in the Federal Bureau of Prison's ("BOP") custody. (D.E. Nos. 51 & 55). Sometime in March 2021, Defendant was transferred to the Cimarron Correctional Facility ("CCF") in Cushing, Oklahoma. (D.E. No. 57 at 1; *see also* D.E. No. 62 at 1). The Court subsequently held two telephonic status conferences concerning Defendant's transfer (i) to BOP custody and (ii) to his destination facility at the Federal Correctional Institution ("FCI") Big Spring in Texas. (D.E. Nos. 59 & 65).

Before the Court's second status conference, Defendant filed two additional supplemental submissions. (D.E. Nos. 63 & 64). By this time, Defendant had been transferred to the Federal Transfer Center ("FTC"), Oklahoma City and was in BOP custody. (D.E. 63 at 1; D.E. No. 64 at 1). The Government filed a supplemental opposition following the Court's second conference and conceded that for purposes of the Motion, Defendant had exhausted his administrative remedies. (D.E. No. 66 at 3 n.1). Thereafter, Defendant was transferred to his destination facility, FCI Big Spring, where he currently remains. (D.E. No. 69 at 1; D.E. No. 70 at 1); *see also Find an Inmate*, FEDERAL BUREAU OF PRISONS, https://www.bop.gov/inmateloc/ (last visited June 24, 2021 2:00 P.M.) (BOP Registration Number 43793-379). Defendant's scheduled release date is August 2, 2021. (*See also* D.E. No. 55 at 2; D.E. No. 66 at 2).

---

[3] Because the FPD assumed representation, the Court terminated Defendant's *pro se* submissions. (D.E. No. 49).

In sum, Defendant contends that his underlying medical conditions, coupled with the COVID-19 pandemic and his confinement—whether at HCCC, CCF, FTC, or his current facility, FCI Big Spring—provide extraordinary and compelling reasons for release under the FSA.[4] (*See generally* D.E. Nos. 51, 56–57, 63–64 & 67).

## II. LEGAL STANDARDS

Once a term of imprisonment has been imposed, the Court may modify it only under very limited circumstances. *In re Morris*, 345 F. App'x 796, 797–98 (3d Cir. 2009) (citing 18 U.S.C. § 3582(c)). Relevant here, 18 U.S.C. § 3582(c)(1) provides that in any case:

> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that--
>
>> (i) extraordinary and compelling reasons warrant such a reduction;
>>
>> [. . .]
>>
>> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

Defendants bear the burden to demonstrate that they are entitled to a sentence reduction by satisfying procedural perquisites and showing extraordinary and compelling circumstances. *See, e.g., United States v. Epstein*, No. 14-287, 2020 WL 1808616, at *2 (D.N.J. Apr. 9, 2020). In addition, the Court must find that "the applicable sentencing factors under § 3553(a) warrant a

---

[4] As instructed by the Court, the Government filed a status report detailing additional information on the COVID-19-related conditions at FCI Big Spring following Defendant's latest transfer. (*See* D.E. Nos. 68 & 69). Because Defendant was transferred to FCI BIG Spring, the analysis below focuses solely on the conditions at Defendant's current facility.

reduction." *United States v. Sparrow*, No. 18-653, 2020 WL 4364328, at *2 (D.N.J. July 30, 2020).

## III. ANALYSIS

### A. Exhaustion

Before proceeding to the merits of a motion for a reduction in sentence, a defendant must meet Section 3582(c)(1)(A)'s exhaustion requirement, which requires either that that the defendant has exhausted all administrative remedies, or that, since the submission of a request to the warden, 30 days have passed without a decision being rendered. *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020). Insofar as it relates to Defendant's request for release from FCI Big Spring, the Government does not dispute that he has satisfied this exhaustion requirement. (D.E. No. 69 at 1). Accordingly, given the Government's concession and Defendant's quickly approaching projected release date, the Court will turn to the Motion's merits.

### B. Extraordinary and Compelling Circumstances

Before Congress passed the FSA, it directed the Sentencing Commission to define the "extraordinary and compelling reasons" standard. *United States v. Alexander*, No. 19-0032, 2020 WL 2507778, at *3 (D.N.J. May 15, 2020). The Sentencing Commission issued a policy statement in which an application note lists three specific extraordinary and compelling reasons that a court may consider "[u]pon motion of the Director of the [BOP]" under § 3582(c)(1)(A). U.S. SENTENCING GUIDELINES MANUAL ("U.S.S.G.") § 1B1.13 (U.S. SENTENCING COMM'N 2018). One of those circumstances is potentially relevant here: a terminal illness or a serious medical condition that substantially diminishes the defendant's ability to provide self-care in a correctional facility and from which he or she is not expected to recover. *See id.*, Application Note 1(A)–(C). In addition, the policy statement includes a catchall provision, which provides that "other reasons" may be sufficient if "[a]s determined by the Director of the [BOP], there exists in the defendant's

4

case an extraordinary and compelling reason other than, or in combination with, the reasons described in [the enumerated] subdivisions." *Id.*, Application Note 1(D).

However, because the Sentencing Commission has not updated its policy statement since Congress enacted the FSA, it does not address defendant-filed motions for compassionate release before the Court, as opposed to motions from the BOP. Accordingly, there has been a debate as to whether courts are constrained by the policy statement or whether they may use discretion to determine what set of circumstances qualify as extraordinary and compelling. There is a growing consensus that courts can independently assess whether a reason is extraordinary and compelling to warrant a sentence reduction. *See United States v. Brooker*, 976 F.3d 228, 235–37 (2nd Cir. 2020); *United States v. McCoy*, 981 F.3d 271, 281 (4th Cir. 2020) ("When a defendant exercises his new right to move for compassionate release on his own behalf, in other words, § 1B1.13 does not apply."); *United States v. Jones*, 980 F.3d 1098, 1109 (6th Cir. 2020) (holding that "the passage of the [FSA] rendered § 1B1.13 'inapplicable' to cases where an imprisoned person files a motion for compassionate release"); *United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020) ("And because the Guidelines Manual lacks an applicable policy statement, the trailing paragraph of § 3582(c)(1)(A) does not curtail a district judge's discretion."); *but see United States v. Bryant*, 996 F.3d 1243, 1264 (11th Cir. 2021) ("[T]he FSA did not give courts the freedom to define 'extraordinary and compelling reasons.' It expanded access to the courts for adjudicating motions under existing criteria.").

Notwithstanding the considerations surrounding judicial discretion in the context of defendant-filed compassionate release motions, courts consistently consider two components under the extraordinary and compelling circumstances analysis in the wake of COVID-19: "(a) identification of a medical condition that renders the defendant particularly vulnerable to serious

5

consequences if infected with COVID-19; and (b) the likelihood of COVID-19 infection, with particular reference to conditions in the institution in which the defendant is incarcerated." *United States v. Moore*, No. 19-0101, 2020 WL 4282747, at *3 (D.N.J. July 27, 2020).

> **i.    Medical Conditions**

When faced with compassionate release motions founded on COVID-19 concerns, courts have referred to certain lists published by the Centers for Disease Control ("CDC") as guideposts for evaluating medical conditions that exacerbate COVID-19 illness. *See e.g.*, *United States v. Dent*, No. 18-20483, 2020 WL 4783921, at *3 (E.D. Mich. Aug. 17, 2020) (relying on the CDC's classifications to conclude that defendant's cited medical condition was insufficient to meet the extraordinary and compelling standard); *United States v. Henries*, No. 00-0788, 2020 WL 4727090, at *2 (D.N.J. Aug. 14, 2020) (same). Currently, the CDC identifies various medical conditions which can make individuals "more likely to get severely ill from COVID-19." *See People with Certain Medical Conditions*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (updated May 13, 2021) (last visited June 24, 2021) ("CDC Medical Conditions List").

First, Defendant's anxiety, adjustment disorder, major depressive disorder, hallucinations, and loss of sleep (*see* D.E. No. 51 at 2–3; *see also* D.E. No. 67 at 1) are *not* on the CDC's list of medical conditions that can make the Defendant "more likely to get severely ill from COVID-19." *See* CDC Medical Conditions List. Second, while Defendant generally claims that his mental health conditions increase his risk of severe illness should he contract COVID-19 (D.E. No. 51 at 2–3; D.E. No. 67 at 1), he does not explain *how* those specific conditions exacerbate the likelihood of COVID-19 infection or severe illness. (*See generally* D.E. Nos. 51, 56–57, 63–64 & 67). In the same vein, to the extent Defendant argues that his mental health conditions worsened from

extended lockdown periods in response to COVID-19 (*see* D.E. No. 56 at 1; *see also* D.E. No. 67 at 1), he does not describe how lockdown or the side effects he experienced from lockdown warrant compassionate release.[5] (*See generally* D.E. Nos. 51, 56–57, 63–64 & 67). For these reasons, Defendant fails to present extraordinary and compelling reasons for a sentence reduction.[6] *See, e.g.*, *United States v. Mata*, No. 15-153, 2020 WL 6580768, at *2 (D.N.J. Nov. 9, 2020) (finding no extraordinary and compelling reason for release where defendant's anxiety and depression were not on the CDC's list of health conditions that "increase the risk of serious illness from the virus that causes COVID-19"); *United States v. Leathers*, No. 19-633, 2020 WL 2219853, at *2 (D.N.J. May 7, 2020) (denying compassionate release where defendant failed to explain how his anxiety and depression made him more likely to contract COVID-19); *see also Sobrado*, 2021 WL 2328143, at *3 (D.N.J. June 7, 2021) (finding no extraordinary and compelling circumstances to justify release while recognizing that "as a result of the rapid spread of COVID-19 throughout prisons, prisoners such as [d]efendant were likely to experience prolonged lockdowns to prevent the spread of COVID-19").

---

[5] Undoubtedly, many correctional institutions likely increased lockdown periods and ceased inmate programs to combat the spread of COVID-19, impacting numerous prisoners. Accordingly, Defendant's contention that COVID-19 rendered him unable to participate in rehabilitative programming while incarcerated (*see* D.E. No. 51 at 1–2, 4, 8; *see also* D.E. No. 64 at 6) similarly does not amount to an extraordinary and compelling reason for early release. *See, e.g.*, *United States v. Sobrado*, No. 18-615-1, 2021 WL 2328143, at *3 (D.N.J. June 7, 2021) (commenting that "participation in the [Residential Drug Abuse Program] is not a right but an opportunity that is denied federal inmates for a variety of reasons nor is success in the program guaranteed"); *see also United States v. Carrera*, No. 14-367-B-40, 2021 WL 1966848, at *3 (N.D. Tex. May 17, 2021) (finding release unwarranted even if rehabilitative programming was unavailable at defendant's facility).

In addition, to the extent Defendant argues that he has not received adequate medical treatment to address his health conditions (*see* D.E. No. 51 at 3; *see also* D.E. No. 56 at 1), he presents no evidence regarding his current treatment regime at FCI Big Spring. Indeed, defense counsel provided no additional information regarding Defendant's confinement at FCI Big Spring to support the notion that he is not receiving needed medical care or that he is subject to harsh conditions of confinement. (*See* D.E. No. 70).

[6] The Court's conclusion is independent of the fact that Defendant received one of the three available COVID-19 vaccines (*see* D.E. No. 51 at 5), each of which has proven to be highly effective at preventing COVID-19 illness in persons who have been fully inoculated. *See Different COVID-19 Vaccines*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/vaccines/different-vaccines.html (last updated May 27, 2021) (last visited June 24, 2021).

### ii. FCI Big Spring

As noted above, Defendant recently arrived at FCI Big Spring—a low security federal correctional institution with an adjacent minimum security satellite camp. *See FCI Big Spring*, FEDERAL BUREAU OF PRISONS, https://www.bop.gov/locations/institutions/big/ (last visited June 24, 2021). The facility houses a total of 959 inmates. *Id.* Since the onset of the pandemic, FCI Big Spring has had 704 inmates and 11 staff members test positive for and recover from COVID-19. *See COVID-19 Cases*, FEDERAL BUREAU OF PRISONS, https://www.bop.gov/coronavirus/ (last visited June 24, 2021). Currently, the facility has no inmates and only one staff member infected with COVID-19. *Id.* Despite any prior surge of positive COVID-19 cases at FCI Big Spring, it appears that, at present, the facility is combating the spread COVID-19 effectively.

Based on the foregoing, Defendant does not pass the initial threshold of demonstrating extraordinary and compelling reasons for a sentence reduction. Thus, the Court need not consider the applicable Section 3553(a) factors. *See* 18 U.S.C. 3553(a).

## IV. CONCLUSION

Accordingly, Defendant's motion is DENIED. An appropriate Order accompanies this Opinion.

Dated: June 28, 2021                 /s/ *Esther Salas*
                                                                **Esther Salas, U.S.D.J.**